# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

MAE M. MCINTIRE,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-3027-MWB

**REPORT
AND RECOMMENDATION**

———————————

    Plaintiff Mae M. McIntire seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). McIntire contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I. BACKGROUND

    McIntire was born in 1962 and has a high school diploma. AR 42, 106, 158. She has past relevant work as an assembler-fitter, deli helper, cashier-checker and picker and packer. AR 244. She filed her application for DIB on May 4, 2009, alleging disability beginning March 28, 2009, due to lymphedema and attention deficit hyperactivity

disorder (ADHD). AR 106-07. She later filed an application for SSI. AR 530-35. After her applications were denied initially and on reconsideration, McIntire requested a hearing before an Administrative Law Judge (ALJ). AR 69. ALJ Thomas Donahue conducted a hearing on May 24, 2011. AR 38-55. McIntire testified, as did a vocational expert (VE) and Loretta Harbert, McIntire's sister. *Id*. The ALJ issued a decision on July 12, 2011, finding that McIntire was not disabled at any time from March 28, 2009, through the date of the decision. AR 25-33. The Appeals Council denied McIntire's request for review on April 17, 2012. AR 18-20. The ALJ's decision thus became the final decision of the Commissioner. AR 18; 20 C.F.R. §§ 404.981, 416.1481.

McIntire then filed a complaint in this court seeking review of the Commissioner's decision. However, on March 18, 2013, the Honorable Mark W. Bennett, United States District Judge, granted a joint motion to reverse and remand the case for further fact-finding. AR 313-14. On December 5, 2013, the ALJ conducted a supplemental hearing, at which McIntire and Harbert testified. AR 329-47. The ALJ issued a new decision on January 10, 2014, finding that McIntire was not disabled at any time from March 28, 2009, through the date of the decision. AR 290-303.

McIntire did not request additional review by the Appeals Council. Instead, she filed a new complaint (Doc. No. 1) in this court on May 7, 2014, seeking review of the Commissioner's decision. This case has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues and the matter is now fully submitted.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. §

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a

3

minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that

there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)   The claimant engaged in substantial gainful activity during the following periods: October 1, 2012 through March 31, 2013; and July 1, 2013 through September 30, 2013 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

(3)   However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4)   The claimant has the following severe impairment: lymphedema (20 CFR 404.1520(c) and 416.920(c)).

(5)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(6)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined [sic] in 20 CFR 404.1567(c) lifting and carrying 50 pounds occasionally and 25 pounds frequently, sitting and standing two hours at a time for a total of six hours in an eight-hour day, and walking the equivalent of three blocks. Additionally, the claimant is limited to only occasional climbing of ropes and scaffolding, and only occasional kneeling, crouching, or crawling.

(7)    The claimant is capable of performing past relevant work as an assembler-fitter, a deli helper, a cashier-checker, and a picker and packer (Exhibit 20E, page 1). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(8)    The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2009, through the date of this decision (20 CFR 404.1520(f)).

AR 290-303.


## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth

Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

McIntire raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

(1)    The ALJ failed to consider whether McIntire was entitled to a trial work period and, as a result, erred in treating McIntire's work activity as evidence she was not disabled.

(2)    The ALJ failed to find the claimant had a severe mental impairment, despite evidence in the record of a severe mental impairment.

(3)    The ALJ failed to properly evaluate McIntire's subjective allegations.

(4)    The ALJ failed to fully and fairly develop the record by failing to obtain certain records relating to McIntire's employment with Wal-Mart.

I will address these arguments separately.

### A.    Trial Work Period

### 1.    Applicable Standards

The Act establishes the concept of a trial work period as follows, in relevant part:

(c) "Period of trial work" defined

(1) The term "period of trial work", with respect to an individual entitled to benefits under section 423, 402(d), 402(e), or 402(f) of this title, means a period of months beginning and ending as provided in paragraphs (3) and (4).

(2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period. For purposes of this subsection the term "services" means activity (whether legal or illegal) which is performed for remuneration or gain or is determined by the Commissioner of Social Security to be of a type normally performed for remuneration or gain.

(3) A period of trial work for any individual shall begin with the month in which he becomes entitled to disability insurance benefits . . . . Notwithstanding the preceding sentence . . . no such period may begin for an individual in a period of disability of such individual in which he had a previous period of trial work.

(4) A period of trial work for any individual shall end with the close of whichever of the following months is the earlier:

(A) the ninth month, in any period of 60 consecutive months, in which the individual renders services (whether or not such nine months are consecutive); or

(B) the month in which his disability (as defined in section 423(d) of this title) ceases (as determined after application of paragraph (2) of this subsection).

42 U.S.C. § 422.

The Eighth Circuit Court of Appeals has held that an ALJ may not base a decision of no disability on the fact that the claimant performed work after the alleged onset date without first determining whether the claimant was entitled to a trial work period. *Newton v. Chater*, 92 F.3d 688, 694 (8th Cir. 1996). The court explained:

Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). A person becomes entitled to disability benefits for each month after five consecutive months of being under a disability. *Id.* §§ 423(a)(1)(D) & (c)(2)(A).

If a claimant is working in a substantial gainful activity, he will be considered not disabled under step one regardless of his medical condition, age, education, and work experience. *Id.* § 404.1420. Any work performed during a period of claimed disability may show that a claimant can engage in substantial gainful activity. *Id.* Relevant factors include amount of earnings and whether the work was conducted in a sheltered or special environment. *Id.* § 404.1574.

Work done during a trial work period, however, may not be considered in determining whether a claimant's disability has ceased during that period. 42 U.S.C. § 422(c)(2) . . . . This provision enables a claimant to test his or her ability to work. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). Work performed during the trial period may only be considered in determining whether a disability ended at some point after the trial period. 20 C.F.R. § 404.1592(a). In addition, a claimant's disability may be found to have ended during the trial work period "if the medical or other evidence shows that [the claimant is] no longer disabled." *Id.* § 404.1592(e)(2).

In order to be entitled to a trial work period, a claimant must be entitled to disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.1592(d)(2)(i). As noted, a claimant becomes entitled to disability insurance benefits after filing an application and waiting five consecutive months during which he or she is under a disability that has lasted or can be expected to last twelve months. 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A). The trial work period begins with the month in which the individual becomes entitled to disability insurance benefits, but it may not begin before the month in which the application for benefits is filed. *Id.* § 422(c)(3); 20 C.F.R. § 404.1592(e). The trial period ends at the close of the ninth month, whether consecutive or not, in which services have been performed, or at the month in which evidence besides the trial work shows the claimant is not disabled. *Id.* § 404.1592(e)(1) & (2).

*Newton*, 92 F.3d at 692-93 [footnotes and some citations omitted].

The entitlement to disability benefits "is not conditioned upon receipt of a benefits award, but only upon the passage of five consecutive months of disability lasting twelve continuous months." *Id.* at 694 (citing 42 U.S.C. §§ 423(a)(1)(D) & (c)(2)(A)). This means a claimant may become entitled to disability benefits before adjudication of his

claim.  *Id.*  It also means, then, that the claimant's statutory trial work period would begin before benefits are actually awarded.  *Id.*  "[A] trial work period starts in the month that entitlement to disability benefits begins, which is the month following five consecutive months of being under a disability that has lasted or is expected to last a total of twelve continuous months.  *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

### 2.    Analysis

McIntire argues that she was entitled to a trial work period and that the ALJ erred in failing to address this issue.  She notes the ALJ's finding that the work she performed from October 2012 through March 2013, and from July 2013 through September 2013, was substantial gainful activity (SGA).  She then contends that the ALJ improperly relied on this finding to conclude that she was not disabled.  McIntire asserts that she is entitled to an award of benefits or, at minimum, reversal and remand for further fact-finding regarding her eligibility for a trial work period.

The Commissioner argues that the ALJ did not err by using McIntire's work history as evidence that she was not disabled.  The Commissioner contends that the ALJ relied on medical evidence and McIntire's testimony to find that she was not disabled.  The Commissioner also argues that only after making this finding did the ALJ further support his conclusion by making reference to the fact that McIntire engaged in SGA during 2012 and 2013.  The Commissioner alleges that McIntire was not entitled to a trial work period because she was never disabled and, thus, never entitled to disability benefits.  The Commissioner also argues that even if McIntire was entitled to a trial work period, the period ended after nine months and that the ALJ was entitled to treat any work performed after that trial period as evidence that she was not disabled.

As noted above, the Eighth Circuit has held that when a claimant performs work during a period of claimed disability, an ALJ must determine whether the claimant was entitled to a trial work period before using that work as evidence that the claimant is not

disabled. *Newton*, 92 F.3d at 692; *see also Flowers v. Barnhart*, 352 F. Supp. 2d 962, 967-70 (D. Neb. 2004); *Tepfer v. Sec'y of Health and Human Serv.*, 712 F. Supp. 156 (W.D. Ark. 1989). Here, the ALJ did not address the issue of whether McIntire was entitled to a trial work period. Instead, the ALJ found that McIntire engaged in SGA from October 2012 through March 2013 and July 2013 through September 2013. AR 294. Based on this finding, the ALJ determined that "the only period the claimant would qualify for disability benefits dates to before October 1, 2012." AR 295. Thus, the ALJ plainly and expressly concluded – based solely on McIntire's performance of work beginning in October 2012 – that McIntire was precluded from an award of benefits after October 1, 2012. The ALJ's failure to consider whether that work might have qualified as a trial work period appears at first glance to be in direct conflict with *Newton*.

The Commissioner contends, however, that the ALJ bifurcated his analysis, first determining McIntire's RFC based on other evidence of record and, only then, noting that her work in 2012 and 2013 provides further support for his RFC finding. Because a trial work period is available only when a claimant is entitled to an award of benefits, the Commissioner argues that it was perfectly appropriate for the ALJ to determine – based on other evidence – that McIntire was not disabled. At that point, according to the Commissioner, there was no need for the ALJ to address the trial work period issue.

The problem with this argument is that it does not correspond to the ALJ's actual ruling. The ALJ did not expressly bifurcate or compartmentalize his ruling to make it clear that he found McIntire to be not disabled without any reliance on the fact that she performed work. As noted above, he concluded that she engaged in SGA beginning in October 2012 and, based solely on that finding, determined that she was disqualified for benefits after October 1, 2012. AR 294. Next, in finding at Step Four that McIntire has the RFC to perform medium work, the ALJ discussed a wide variety of evidence – *including* her return to work. AR 296-301. The final paragraph of the ALJ's RFC analysis states:

> In sum, the above residual functional capacity assessment is supported by
> the limited extent of the objective medical evidence, the sparse treatment
> history of the claimant, her many activities of daily living, her admission
> regarding the reason for leaving her last job, *her return to SGA after the
> relevant period*, and the opinion of Dr. Brunkhorst.

AR 301 [emphasis added]. The ALJ did not state that his RFC conclusions would have been the same absent McIntire's return to SGA. Instead, he listed her return to SGA as one of six factors that he relied upon to determine that she had the RFC to perform medium work. AR 296, 301.

Under *Newton*, it was error for the ALJ to rely on evidence that McIntire returned to work without considering whether she was entitled to a trial work period. *Newton*, 92 F.3d at 692. The only remaining question is whether this error requires remand. As the Commissioner points out, the trial work period ends at the close of the ninth month, whether consecutive or not, in which services have been performed. *See* 20 C.F.R. § 404.1592(e)(1) & (2). The Commissioner contends that McIntire admitted, during the ALJ's hearing, that she worked for two years, from November 2011 to October 2013. Doc. No. 13 at 10 (citing AR 332, 334). Thus, according to the Commissioner, even if McIntire was entitled to a trial work period, the ALJ was entitled to consider all work performed in excess of nine months as evidence that McIntire was not disabled.

This argument misstates the record. I have carefully reviewed the testimony cited by the Commissioner and find no "admission that [McIntire] worked for two years from November 2011 to October 2013." Instead, McIntire agreed with her attorney's characterization that "we're looking at two different periods of time ... [t]he first time you were working as a sales associate ... [t]hen you were off for some time and came back as a cashier." AR 334. I have no idea how the Commissioner interprets that testimony as an "admission" that McIntire "worked for two years." Instead, McIntire's testimony is consistent with the ALJ's finding – based on earnings records – that she engaged in SGA from October 1, 2012, through March 31, 2013, and from July 1, 2013, through September 30, 2013. AR 294. Those two separate periods of time add up to a

total of nine months – the maximum permissible length of a trial work period. 20 C.F.R. § 404.1592(e)(1) & (2).

The ALJ erred in using McIntire's return to work as evidence that she was not disabled without first considering whether she was entitled to a trial work period. As such, I must recommend the case be reversed and remanded with instructions that the ALJ address that issue.

## B. *Severity of Mental Impairments*

### 1. *Applicable Standards*

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043.

It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such

impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

"Some of the factors an ALJ may consider when determining a claimant's mental impairments are (1) the claimant's failure to allege mental impairments in his complaint, (2) failure to seek mental treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating mental impairment." *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011). The mere presence of a mental disorder does not automatically indicate a severe disability. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). When considering a claimant's own complaints, the ALJ is required to explicitly discredit a claimant and provide reasons. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints.").

In determining whether a claimant's mental impairments are "severe," the regulations require the ALJ to consider "four broad functional areas in which [the ALJ] will rate the degree of [the claimant's] functional limitations: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild" and there are no episodes of decompensation, then the ALJ should conclude that it is a non-severe impairment unless the evidence indicates otherwise. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

### 2.     *The Appeals Council's Instructions*

After this court granted the parties' joint motion to reverse and remand the case for further fact-finding, the Appeals Council instructed the ALJ to: (1) provide the claimant with an opportunity to submit additional evidence concerning her impairments, (2) further evaluate the claimant's mental impairments, (3) reconsider the claimant's impairments at Step Two and (4) give further consideration to the claimant's maximum

RFC during the entire period at issue and provide rationale with specific reference to evidence of record in support of assessed limitations. AR 326. The Appeals Council wrote:

> The hearing decision does not adequately evaluate the claimant's impairments at step two, particularly her borderline intellectual functioning. At step two, the decision does not describe the claimant's severe impairments, as the step two template finding is left blank and there is no further discussion at step two as to what impairments are severe (Tr. 27). The decision does state at step two that the claimant's attention deficit hyperactivity disorder (ADHD) is not severe; and states in the residual functional capacity rationale that the claimant's lymphedema is severe (Tr. 27 and 30). However, in finding ADHD not severe, the decision does not contain a "B" criteria analysis pursuant to the special technique in 20 CFR 404.1520a. Additionally, the decision does not evaluate the claimant's borderline intellectual functioning; *and in this regard, does not evaluate the opinion evidence from the state agency psychological consultant and the psychological examining source relating to this impairment (Exhibit 5F, 7F, 8F). This is significant because the psychological examining source diagnosed the claimant with ADHD and borderline intellectual functioning (Tr. 264), and the State Agency psychological consultant indicated these impairments were severe and caused mental limitations* (Tr. 268, 271, 280). Further evaluation is thus warranted in this case regarding the claimant's severe impairments, particularly the claimant's mental impairments.

AR 325 [emphasis added].


### 3.     *Medical and Opinion Evidence*

There is little medical evidence in the record. There is no mental health treatment history and no history of McIntire being prescribed or taking psychiatric medications. AR 263, 268, 726. There are, however, mental health opinions from William Morton, Psy.D., Sandra Davis, Ph.D., and Dan Rogers, Ph.D. AR 263, 266, 726.

Dr. Morton conducted a psychiatric evaluation of McIntire on September 10, 2009. AR 263. He diagnosed ADHD and borderline intellectual functioning, with an

estimated IQ score of 79 and a Global Assessment Functioning (GAF) score of 50.[1] AR 264. He found that McIntire had sleep disturbance, appetite disturbance, irritability, tearfulness, loss of concentration, fatigue, social isolation and feelings of worthlessness. AR 263. Her mania, anxiety and psychosis screenings were all negative. *Id.* Dr. Morton also noted that McIntire's "attention, concentration, and vigilance were deemed to be within normal limits" and he noted no indications of significant memory impairment or learning disabilities. AR 264.

On January 21, 2010, Dr. Davis reviewed records and completed a mental RFC assessment. AR 266-83. Dr. Davis concluded McIntire was moderately limited in four categories: (1) understanding and remembering detailed instructions, (2) carrying out detailed instructions, (3) maintaining attention and concentration for extended periods and (4) completing a normal workday and workweek without interruption from symptoms and performing at a consistent pace without unreasonable breaks. AR 266-67. She found McIntire was not significantly limited in any other area. *Id.* However, Dr. Davis did note that McIntire was diagnosed with borderline intellectual functioning, had problems with attention and concentration, has an estimated IQ score of 79, had a sixth grade reading and arithmetic level and has required accommodations for her academic work at community college. AR 268. In considering the paragraph B criteria, Dr. Davis noted mild restriction on activities of daily living, difficulties in maintaining social functioning and no episodes of decompensation. AR 280. She concluded McIntire had moderate difficulties in maintaining concentration, persistence or pace. *Id.*

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 41 to 50 indicates the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

On December 27, 2012, Dr. Rogers performed a consultative psychological evaluation of McIntire. AR 726-28. He also reviewed Dr. Morton's evaluation. *Id.* Dr. Rogers concluded McIntire was of average intelligence, with fair attention, poor concentration and normal vigilance. AR 728. McIntire's immediate retention was fair, she could recall personal information and recent facts, but recalling remote knowledge was difficult and she had only a fair ability to comprehend and express abstract concepts. *Id.* She had poor arithmetic skills, pace, concentration and attention. *Id.* Dr. Rogers opined that her mental status was consistent with long-standing depression and a significant learning disability. *Id.* He noted that while McIntire's intellect might only be borderline, it seemed average except for learning problems. *Id.* He stated she could understand and remember instructions, procedures and places unless it became complex or there was interference and that she would not be able to carry out instructions. *Id.*

### 4.      *The ALJ's Findings*

The ALJ found that McIntire's mental impairments were not severe within the meaning of the Act. AR 295-98. That is, he concluded that her ADHD and borderline intellectual functioning "can have no more than a minimal effect on her ability to do basic work activities." AR 298. The ALJ noted that neither impairment had a history of treatment or prescribed medications during the relevant period of time. *Id.* The ALJ stated that Dr. Morton made the diagnoses during an examination, where he observed difficulties with McIntire's attention to details, sustaining attention, listening, organizing tasks, distractibility and restlessness. *Id.* However, the ALJ noted that Dr. Morton acknowledged McIntire's lack of mental health treatment. *Id.* The ALJ also concluded that the record contained no indication of a loss of adaptive functioning secondary to a learning disorder or borderline intellectual functioning. *Id.*

With regard to McIntire's activities of daily living, the ALJ noted:

The claimant's activities of daily living during the relevant period, including those indicative of her social functioning and capacity for concentration,

persistence, or pace, further support those findings. According to her function report, the claimant still attended classes at a college, fed and watered her cat and horse, did laundry, drove, washed dishes, dusted, swept, rode horses with a friend, and went camping with her sister. She also retained the abilities to count change, pay bills, handle a savings account, and shop in stores (Exhibit 3E & 11E, generally).

*Id*. The ALJ concluded:

Such abilities show not only that the claimant had no more than mild difficulties in activities of daily living, but also that she had minimal problems getting along with others or maintaining attention and concentration to complete tasks of varying difficulty. For example, attending college classes, counting change, riding a horse, and driving all require attention to detail, and the latter two activities show that the claimant could react quickly to changes in environments as they arose. This suggests no more than minimal difficulty with regard to concentration, persistence, or pace. Moreover, the claimant seems to have been able to not only be around others when completing tasks such as shopping or going to class, but also in more direct ways, such as when camping with her sister or riding horses with her friend. That suggests no more than minimal difficulties in social functioning.

Given the weight of evidence suggests no more than mild problems in activities of daily living, social functioning, and capacity for concentration, persistence, or pace, as well as the lack of any formal psychological treatment during the relevant period, the undersigned finds the claimant's ADHD and borderline intellectual functioning had no significant impact on her ability to perform basic work activity.

*Id*.

### 5.    *Analysis*

McIntire argues that the ALJ failed to properly assess the severity of her mental impairments. In particular, she alleges the ALJ failed to analyze Dr. Davis' opinion entirely and that the ALJ did not accurately weigh the remaining psychologists' opinions. She also contends that the reasons the ALJ gave for discounting Dr. Morton's and Dr. Rogers' opinions were inappropriate and not supported by substantial evidence on the record as a whole. The Commissioner argues the ALJ properly found McIntire's mental

impairments were not severe and properly analyzed and weighed the opinions. The Commissioner contends that even if the ALJ did err in not finding the mental impairments severe, any error was harmless because the ALJ found at least one impairment severe at Step Two and, therefore, continued to Step Three.

As discussed above, the ALJ reviewed Dr. Rogers' opinion but gave it little to no weight because (1) he did not examine McIntire during the relevant time period, (2) McIntire engaged in substantial gainful activity before and after Dr. Rogers' evaluation, which suggested he exaggerated the extent of McIntire's claims and (3) McIntire engaged in activities of daily living that were indicative of social functioning and a capacity for concentration, persistence and pace. AR 301. Dr. Rogers completed his evaluation on December 27, 2012, during the time when McIntire may have been entitled to a trial work period. If she was indeed entitled to that period, Dr. Rogers' opinion would have occurred during the relevant time. If that is the case, then the ALJ's reasons for discounting the opinion would not be sufficient to support his findings. As such, I recommend that the ALJ be directed on remand to determine whether McIntire was entitled to a trial work period. If so, the ALJ should then re-evaluate Dr. Rogers' opinion and provide sufficient reasons for the weight given to that opinion.

More troubling is the fact that the ALJ did not specifically address Dr. Davis' opinion. This court, in granting the joint motion for remand, directed the ALJ to re-evaluate McIntire's mental impairments and "further evaluate the opinion evidence from the examining and non-examining sources." AR 313-14. The Appeals Council then made specific reference to Dr. Davis' opinion in its own remand order, stating that the ALJ failed to evaluate "the opinion evidence from the State Agency psychological consultant and the psychological examining consultant" concerning McIntire's borderline intellectual functioning. AR 325. Dr. Davis was the psychological consultant. AR 266-83.

Despite these unambiguous directions, the ALJ failed to mention, let alone analyze, Dr. Davis' opinion on remand. AR 290-303. This was plain legal error.

*Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."). As such, on remand I recommend the ALJ be directed to provide an analysis of Dr. Davis' opinion, along with all other evidence regarding McIntire's mental impairments, and give sufficient reasons supported by the record as a whole for any weight given to the opinions and evidence.

Finally, the ALJ discounted Dr. Morton's opinion because there was no treatment or medication history regarding McIntire's ADHD or borderline intellectual functioning. AR 298. The ALJ also noted that the record contained no indication of a loss of adaptive functioning secondary to her learning disorder or borderline intellectual functioning. *Id.* Nor did the record indicate that she had a history of mental problems. *Id.* The ALJ noted that McIntire continued to engage in activities of daily living despite Dr. Morton's diagnoses and that those activities were evidence of normal social functioning and a capacity for concentration, persistence and pace. *Id.*

Typically, these would be appropriate reasons to afford little weight to Dr. Morton's opinion. However, the ALJ failed to consider Dr. Rogers' and Dr. Davis' opinions, which support Dr. Morton's opinion. Because the ALJ did not appropriately consider those opinions, as discussed in detail above, I find that the ALJ's assessment of Dr. Morton's opinion is not substantially supported by the record as a whole. I recommend that on remand, the ALJ be directed to re-evaluate and re-weigh Dr. Morton's opinion in conjunction with the other opinion evidence of record to determine whether McIntire's mental impairments are severe.

## C.     *Evaluation of Subjective Allegations*

### 1.      *Applicable Standards*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

(1)  the claimant's daily activities;

(2)  the duration, intensity, and frequency of pain;

(3)  the precipitating and aggravating factors;

(4)  the dosage, effectiveness, and side effects of medication; and

(5)  any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). However, the Eighth Circuit has repeatedly stated that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) (citing *Harris v. Sec'y of Dep't of Health and Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992)). A claimant need not prove she is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). Yet, the Eighth Circuit has also held that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

With respect to determining whether activities of daily living are inconsistent with subjective complaints of disability, the ALJ must consider the "quality of the daily activities and the ability to sustain activities, interest, and relate to others over a period of time and the frequency, appropriateness, and independence of the activities." *Wagner*

*v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (citing *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010), but such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ need not explicitly discuss each factor as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). However, in reviewing the ALJ's credibility determination I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). I must defer to the ALJ's

determination regarding the credibility of testimony as long as it is supported by good reasons and substantial evidence. *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### 2. *The ALJ's Findings*

The ALJ found that McIntire's statements concerning the intensity, persistence and limiting effects of her symptoms from lymphedema were not entirely credible. AR 297. After referencing the *Polaski* factors and examining some of the medical and opinion evidence, which showed McIntire's lymphedema was severe, the ALJ concluded:

> Nothing was prescribed at that time, but the claimant was instructed to elevate her leg to alleviate the swelling. Unfortunately, these few records are the extent of the claimant's treatment regarding her lymphedema prior to her engagement in substantial gainful activity—none of which are from the time after the alleged onset date. While this fact alone does not disqualify the claimant from a finding of disability, it does suggest her ability to cope with her impairment without the need of medical care.

AR 298-99. The ALJ went on to discuss McIntire's return to work and noted that she admitted in her function report that lifting fifty pounds would not be a problem for her, which he found diminished her credibility and supported his finding that she was not disabled. AR 299.

The ALJ noted McIntire's testimony regarding her employment history, the reasons she gave for leaving her job and her receipt of unemployment benefits. AR 300. The ALJ stated:

> Moreover, the claimant admitted at hearing that her last employment ended due to her company closing, not her impairment (Hearing Record of 5/24/2011 at 1.56:15). Additionally, when asked if she thought she could resume working had the company she worked for remained open, she responded that she probably could. Further damaging the claimant's credibility is the fact she received unemployment benefits since her alleged onset date (Exhibit 7D, page 1).

***

When the claimant applied for unemployment compensation, she had to assert that she was able to work. Such an assertion constitutes an admission against the interests of any individual claiming the inability work because of a medically determinable physical or mental impairment as required to qualify for Social Security disability benefits. Applying for unemployment compensation does not prove by itself that the applicant is not disabled. Nevertheless, it seriously undermines a claimant's assertion that she is incapable of working in competitive employment (*Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997) reh. den.).

*Id.* The ALJ also concluded that like McIntire's testimony, the testimony of McIntire's sister, Loretta Harbert, was not credible. AR 300-01. The ALJ considered the relationship between McIntire and her sister and determined Harbert was not a disinterested third party. AR 301. The ALJ stated Harbert would have a natural tendency to agree with the symptoms and limitations McIntire alleges and therefore, gave Harbert's testimony little weight, as McIntire's subjective allegations were not credible. *Id.*

### 3.    *Analysis*

McIntire argues the ALJ failed to properly consider her subjective allegations of disabling pain and limitations, the need to elevate her leg and her need for frequent absences from work. She claims her testimony and allegations are consistent with disability and that the medical evidence generally supports her claims. McIntire contends that the ALJ incorrectly assessed her activities of daily living when he found they were inconsistent with her subjective allegations and ignored her testimony that explained these perceived inconsistencies. The Commissioner argues that the ALJ offered valid reasons, grounded in the evidence, for his RFC finding and for discrediting McIntire's subjective claims. The Commissioner contends that McIntire is in essence asking for the medical evidence to be re-weighed to support a finding that her subjective allegations are supported by the medical evidence. The Commissioner asserts the ALJ's decision incorporated McIntire's subjective complaints to the extent they are corroborated by the medical evidence and that the decision is supported by substantial evidence.

Based on my review of the record, I conclude that for the most part, the ALJ gave good, detailed reasons for discounting McIntire's subjective complaints of pain and her limitations. The ALJ discussed McIntire's activities of daily living and noted that she engaged in many activities that do not support her claims of disabling pain. AR 298. Specifically, the ALJ referenced McIntire's function report, in which she stated she still attended classes at a college, fed and watered her cat and horse, did laundry, drove, washed dishes, dusted, swept, rode horses with a friend and went camping with her sister. AR 164-77, 211-20, 298. The ALJ determined those activities generally showed that McIntire had no more than mild difficulties. AR 298.

The ALJ also cited medical evidence, treatment records and the opinion from Joseph Brunkhorst, M.D., to conclude McIntire's claimed limitations were not credible. The ALJ took into account evidence of McIntire's significant lymphedema and Dr. Brunkhorst's opinion that lymphedema would limit the type of work she could engage in. AR 299. Based on that evidence, along with evidence of McIntire's fairly active lifestyle and activities of daily living, the ALJ restricted McIntire to medium work with certain limitations. *Id.*

McIntire correctly points out that there is contradictory evidence of her need to elevate her leg and physician opinions that lymphedema will require some restrictions. However, I am not allowed to re-weigh the evidence. If it is possible to draw two inconsistent positions from the evidence and one of those positions is that of the Commissioner's, I must affirm the Commissioner's decision. *Kluesner*, 607 F.3d at 536. I may not reverse the Commissioner on this issue merely because substantial evidence would also support the opposite conclusion. *Baker*, 703 F.2d at 1150.

McIntire also argues that the medical and opinion evidence proving her lymphedema was a significant limiting factor is corroborated by the testimony of her sister. She contends that Harbert's testimony substantially supports and corroborates her claims and therefore reversal is required. However, the ALJ was entitled to discount Harbert's corroborating testimony for the same reason used to discredit McIntire's, as

Harbert is closely-related to McIntire, resided with and helped care for McIntire for a period of time and may have a financial interest in a disability finding. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006) (ALJ's failure to give specific reasons for disregarding testimony of the claimant's husband was inconsequential, as the same reasons the ALJ gave to discredit claimant could serve as basis for discrediting the husband). The ALJ provided detailed reasons for his findings and those findings are substantially supported by the medical evidence, which would typically end the analysis.

However, in discrediting McIntire's credibility the ALJ also relied on the fact that she engaged in SGA from October 2012 through March 2013 and July 2013 through September 2013 and therefore disregarded medical evidence for the period after October 1, 2012. AR 294-95, 299-301. McIntire argues that this constitutes reversible error because the ALJ did not consider whether she was entitled to a trial work period. I have already recommended remand for consideration of the trial work period issue. If, upon remand, the ALJ determines that McIntire was entitled to a trial work period, then he must consider what effect, if any, that determination has on his assessment of McIntire's credibility.

### D.    *Development of the Record*

#### 1.    *Applicable Standards*

A social security hearing is a non-adversarial proceeding, and the ALJ must develop the record so that "deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). As such, an ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). Although an ALJ must fully and fairly develop the record, he "is not obliged 'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d

906, 909 (8th Cir. 1996)). Nor does the duty to develop the record require an ALJ to function as a plaintiff's attorney, rather, the ALJ is only responsible for developing a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001).

### 2. Analysis

McIntire argues that the ALJ failed to fully and fairly develop the record with regard to certain records concerning her employment at Wal-Mart in 2012 and 2013, including attendance records, Family and Medical Leave Act information and wage records. McIntire contends that these records were necessary in order for the ALJ to accurately analyze whether she was entitled to a trial work period. She further contends that the ALJ erred by failing to help her obtain these documents, as she requested. The Commissioner argues that additional information regarding McIntire's employment at Wal-Mart was not necessary because McIntire was not entitled to a trial work period. The Commissioner also contends that because the ALJ allowed McIntire to testify about her work at Wal-Mart, her employment records were unnecessary.

The record includes some evidence concerning McIntire's earnings from employment at Wal-Mart from 2011 to 2013. AR 536-42, 548, 571-72. It also includes Wal-Mart's response to an employer questionnaire that provides some information about McIntire's work history, including an opinion that McIntire was not able to work eight hours, five days a week because of swelling in her leg. AR 696-97. In addition, McIntire testified at length about her work at Wal-Mart. AR 332-40. For example, she testified that she missed work at least once a week and nine to ten times per month. AR 336-37. She also discussed productivity and provided evidence that she was unable to meet Wal-Mart's productivity requirements. AR 340, 673-83.

An ALJ is only required to develop a reasonably complete record. *Clark*, 28 F.3d at 830-31. Here, the combination of documentary evidence and McIntire's testimony constitutes a reasonably complete record regarding McIntire's work at Wal-Mart. McIntire has not established that additional information, such as specific dates she missed work, would have been anything other than cumulative. I conclude that the ALJ did not commit error by failing to take additional steps to develop the record concerning McIntire's employment at Wal-Mart.

## VI.    CONCLUSION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that McIntire was not disabled be **reversed and remanded** for further proceedings and that judgment be entered against the Commissioner and in favor of McIntire. On remand, the ALJ should first determine whether McIntire was entitled to a trial work period and, if so, determine whether the work she completed from October 2012 through March 2013, and from July 2013 through September 2013, qualified as a trial work period. The ALJ should also re-weigh the opinion evidence concerning McIntire's mental impairments and determine if those impairments are severe. The ALJ should then consider what effect, if any, these determinations have on his evaluation of McIntire's credibility and RFC.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 25th day of June, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE